## Case No. 4,929.

### FORBES v. PARSONS.

[Crabbe, 283.] 1

District Court, E. D. Pennsylvania. Oct. 4, 1839.

1 [Reported by William H. Crabbe, Esq.]

Mr. Brooke, for libellant.
Mr. Bulkley, for respondent.

HOPKINSON, District Judge. The libel in this case, with the amendment added to it, contains two grounds of complaint. The first charges several acts of personal violence, committed by the respondent upon the libellant, at different times, for which damages are claimed. The second is a demand for wages alleged to be due to the libellant for his services as cook and steward on board the Suffolk, on her late voyage from the port of Shields, in the kingdom of Great Britain, to Philadelphia.

The former charge will be first considered. By the shipping articles it appears that the libellant shipped as cook and steward. Evidence has been given on the part of the respondent to show that when the libellant offered himself to the ship, as her cook, he represented himself to be well qualified to perform the duties of that service; that he said he was a good cook, and had been in that capacity on board another vessel for nine months. Some attempt was made to

contradict this testimony, but I am inclined to believe it, because it is natural that an inquiry would be made of his capability to perform the duties he was to be hired for, and that he would answer affirmatively. It is not, however, of importance whether the libellant did or did not make this direct allegation of his fitness for the place he offered himself to fill; it must be presumed and implied from his contract. He was engaged as the cook and steward of the ship; he was hired and paid for his services in that capacity; and he thereby undertook that he had experience and skill to enable him to perform these services, at least reasonably well.

That the respondent chastised the libellant, on several occasions, is not denied, but it is alleged that it was not severe or unreasonable, and was justified by the discovery, soon after the vessel got to sea, that the libellant was unable to perform the duties he had undertaken; and that, from carelessness or obstinacy, he did not even do as well as he could; that the victuals were so badly cooked as to be unfit for food; and that his galley, and cooking utensils, were kept in a state of disgusting dirt and filthiness. It cannot be doubted that his cooking was exceedingly bad, either from want of skill or wilful neglect; and the evidence is satisfactory to show that his galley and pans were kept in a very dirty condition. The bad cooking is proved by the crew, his own witnesses, as well as by the officers of the ship. Complaints were made of it by the crew, to the captain; so that it was not only the table of the cabin, or the taste of the officers, that was offended, but the appetites of the sailors could not encounter the libellant's cooking. The captain and mate were frequently obliged to cook, not only for themselves, but for the crew. The men once went, in a body, to the captain, with the complaint that the victuals were so badly cooked that they could not eat them. The fault was not in the ship's provisions, which, it is admitted, were good. The libellant has endeavored to excuse himself for this fault, by charging it on the inconvenient smallness of the galley, and the insufficiency of his cooking utensils. He has certainly failed in this. Not only the officers of the ship, but competent disinterested witnesses, who have examined the galley and utensils, testify that both are as good, and, indeed better, than are usually found in a vessel of the same size. It is also proved by the witnesses of both parties that the ship had the same galley, and fewer pans, on her voyage from Boston to Havana, and thence to London and Shields, than on her return, but that no complaint was made, by the former cook, of any deficiency in his conveniences for cooking, nor was there any complaint of his cooking by officers or men.

So stands the case of the libellant, on the question of his performance of his duties as cook and steward of the ship. If his deficiencies were the result of carelessness or obstinacy, he was, doubtless, a fit object of punishment, and if he was really ignorant and incapable of the duties of the place he had assumed, he was guilty of a fraud and deception in undertaking to perform them, and comes here entitled to no particular favor. However this may be as to his cooking, it can hardly be denied that, with ordinary care and industry, he might have kept his galley and pans clean. Upon the subject of his ignorance and incapacity, we cannot avoid to remark that it was of very serious importance to the officers and crew of a ship. To have before them a long voyage, with the disheartening prospect of having their food set before them in a condition hardly fit to be put into their mouths, was indeed a trial of patience and temper that few men would pass through and maintain their good humor. The defects of an ordinary seaman may be supplied by his comrades, but the cook stands by himself, and if he fails, no substitute, unless by an accident, can be found. To have a good dinner spoiled by the cook, is only next to having no dinner. The stomach has a wonderful control over the man and his passions, and a good-natured man, disappointed of his dinner, may become very cross. It is further in evidence that, when the cook was spoken to, by the officers, for his bad cooking, he would make rude and insolent replies. All the witnesses, however, on his part, testify that he never was insolent or disobedient to any order given him.

Having thus stated the cause and provocation given by the libellant, for the injuries he complains of, we must look to the conduct of the other party, and see whether he has exceeded the bounds of moderation, in punishing the offences of the libellant; for it must not be understood that this, or any other provocation, will justify cruel and immoderate chastisements. Libels in this court, for assaults and batteries, committed on the high seas, are becoming so frequent, and have sometimes been for such trivial injuries, that it is well that the principles which govern me in deciding them, should be distinctly explained. The expedition with which such suits are disposed of in this court, being generally terminated in a few days, naturally brings the complaints here, as the necessary delays of the common law courts, unless in cases of extraordinary aggravation, make it impossible to obtain redress there. Neither the parties nor their witnesses can be detained until the trial can be had in the course of the business of the court. If, therefore, the doors of this court were not open to such complaints, much oppression, and many grievous injuries, might be suffered, without redress. On the other hand, it must be remembered that the speed and facilities of trial here, with the moderate costs attending it, offer a temptation to

seamen, under bad advisers,—generally their landlords,—to try experiments in bringing suits on false and frivolous pretences, to take their chance of getting, by trial or compromise, something from the master. If unsuccessful, they are unable to pay the costs of suit; and, in truth, the attempt is made with some prospect of gain, and no apprehension of loss in any event. While, therefore, I have been prompt to give a reasonable compensation for real wrongs, I have endeavored to check and discourage frivolous suits and vexatious litigation.

Nobody will believe that the law which governs the deportment of men on shore to each other, can be applied to their habits and conduct on board of a ship. That which would be an assault, or an assault and battery, in a drawing-room, or in the streets of our city, and punishable by indictment or a civil suit, cannot be so considered among the rough inmates of a ship at sea. The code of manners is entirely different, as is the situation and character of the men. If striking at a man, without touching him, or pointing an offensive weapon to him, or holding up the fist, were to be considered as good ground for a suit; if any rude or angry touching of the person, however lightly, is to be adjudged an assault and battery, for which damages may be recovered; no vessel could arrive without a plentiful crop of actions, equally injurious to the plaintiff and defendant. This cannot be the law of the sea practically, whatever it may be in theory. In questions of this kind, between the officers and the seamen of a ship, my desire has been to maintain a safe and proper discipline, preserving, on the one hand, a necessary and salutary obedience on the part of the seamen, and on the other, protecting him from all cruelty and undue violence, and from any severity not required for the support of the proper authority of the officer, giving a liberal consideration to the exigencies of the occasion. The officer may not, under the pretence of discipline, take advantage of some trifling fault to indulge ferocious passions, or some particular ill will against the offender.

Generally speaking, I should consider a seaman entitled to recover damages for an assault and battery from the officer of a ship —First, where personal violence was inflicted upon him, although not excessively, wantonly and without any provocation or cause; second, where provocation and cause were given by the seaman, but the punishment was cruel and excessive, having no reasonable proportion to the provocation or fault for which it was inflicted; third, I have always looked with a severe eye to the instrument used in punishing. It should be that which is the ordinary instrument for such occasions. To employ a deadly, or dangerous weapon; to strike a man down with a handspike, or bludgeon; to cut him with a sword, or stamp upon him, when prostrated, endangering his health and life, I have always deemed unlawful modes of punishment, although the injury received from them may not have been very severe. But if a seaman has given cause for punishment, by disobedience, or neglect of duty, by insolence and insubordination to the officers and their lawful authority, and the officer, in a moment of irritation, should strike him with his fist (although I do not approve of such blows, a rope being the proper instrument of punishment), or shall correct him with a rope, I cannot institute a very nice and scrupulous comparison between the offence of the sailor and the number or violence of the blows inflicted upon him for it. It will be incumbent on him to show that they were cruel and excessive.

Having these principles in view we will examine the circumstances of the case now to be decided. First, as to the provocation or cause given by the libellant for punishment, I have already stated it. In his libel, as a material part of his case, he has averred that "during the whole time he was on board of the said ship he did well and truly perform his duty." We have seen how far he has been from sustaining this averment. The question is, whether his delinquency was a fit subject of punishment; and if so, whether the punishment inflicted was excessive, and so disproportionate to the offence, so marked with cruelty and oppression, as to entitle him to damages for the wrong. Thinking that his offence justified punishment, I shall confine my inquiry to the question of excess. The first assault and battery complained of in the libel, is that which is spoken of by the witnesses as having happened two or three days after the ship got to sea. She sailed on the seventh of August, and the libel lays the assault on the tenth. None of the witnesses (indeed but one of them testifies to this transaction) give such an exaggerated account of it as is presented in the libel. Was the wrong proved such an one as supports the claim for damages?

Joseph Torente, the first witness examined, knew nothing of this beating. He began his testimony by saying he knew of libellant being flogged once, which was when they had been twenty days out. The second charge laid in the libel is for an assault and battery on the twenty-ninth of August, which in point of time corresponds very nearly with that mentioned by Torente, but they differ materially in their circumstances. The libel asserts that the assault was made with a table knife, with which the respondent struck the libellant a violent blow across his mouth, cutting his lips; that the respondent seized him by the throat, and struck him violently with a frying-pan and kicked him. The statement given by the witness is very different. The affair of the knife and frying-pan was spoken of by other witnesses, and we shall see what they say about it, hereafter. Torente's account of the flogging

when they were twenty days out, is that the libellant was flogged with a large piece of rope. He saw nothing of the knife, nor of the frying-pan, nor of seizing him by the throat. He says that it was about a pan which the captain said was not clean. When the captain had given some blows, the cook asked the crew if they would stand by and see him abused. This is all he said of that transaction. He afterwards said that he recollected another beating, with a piece of rope five or six feet long, and an inch and a half in diameter; that the captain gave the libellant five or six blows, not very heavy, the captain saying he would not hurt him. It was about burning some coffee. He then added that he saw the libellant's mouth cut after both these beatings; that his lips were bleeding, but not much; that he does not know whether they were cut or not. After these beatings libellant went immediately to his duty. This witness testifies to the general humane conduct of the captain to the crew; indeed, with the exception of the cook, none complained of the treatment, or had any reason to do so. The next witness was George Owens. The first beating he saw was after they had been twenty days out. Of course he gives no support to the first assault charged in the libel. He says that the first beating was about a frying-pan that was dirty. The captain gave him about six lashes, and the rope gave out, that is, it unravelled, and he then tied a knot in it, and struck the libellant violently. The witness was more than half the ship distant from them. He does not mention, as Torente did, that the cook called out to the crew, but, like Torente, he knew nothing of the blows with the knife, the seizing by the throat, &c., as set forth in the libel to have happened at this time. As to the knife, he testifies that, after the affair just related, which took place when they were twenty lays out, the pan had some rust in it; that the captain took a knife and began to scrape it, and then daubed it in the cook's face. It cut his face, and the blood came out. This, I presume, is the explanation of the assault and striking made with a knife. This witness saw the captain pull the cook out of the galley several times, and strike him on the head with his fist. This witness somewhat impaired my confidence in his testimony by saying, in conclusion, that the captain behaved middling to the crew, no great things, but that he would not sail with him again for five hundred dollars a month. John Collins was a steerage passenger in the ship. He saw the captain beat the libellant with a rope's end. It was about the cooking. He says the cook showed him his body; it was very bad, it looked black. At another time he saw the cook come up from the cabin with his mouth cut and bleeding; but he did not know how it happened, or who did it. George Appel saw the captain give

the cook about fourteen blows; they were not heavy, but middling; saw him strike him with a frying-pan, and kick him on the cheek. He struck him with the pan because it was not clean. George Wilson, the cabin boy, about ten years of age, but smart and intelligent, is the only witness who speaks of the beating laid in the libel to have been about the tenth of August; but he gives no details such as are set forth in the libel. He says it was about three days after they were at sea; that it was about the pans being dirty; that the captain got some dirt out of the pan, with a knife, and wiped it across the cook's face. The boy saw the captain strike one blow on the cook's body with his fist; that he struck him for dirtiness; that the pans, cups, and towels were dirty; and that complaints were made that the victuals were not well cooked.

Here the libellant closed his evidence, and it must be seen that he has not made out. a strong case by his proof, and that it falls far short of the allegations of his libel. No serious injury appears ever to have been done to him, at any time; he went to his work, as usual, immediately after every beating, and none of the witnesses speak of the beatings as being severe, much less disabling. The instrument used was a rope, about the size of which there is a difference between the witnesses of the libellant, and those produced on the part of the respondent. The wiping a dirty knife across his face, and the blow with a dirty frying pan, can not be considered as very aggravated or cruel assaults, nor were they followed by any serious consequences. If the articles in question were as dirty as they have been represented, we can hardly be surprised that they should suddenly have been used as the means of punishment.

The two officers of the ship, the first and second mates, were produced on behalf of the respondent; none others were left for him, as the libellant had called all the crew that remained in this city. Elihu Arnold testified, as some of the other witnesses had done, that when the libellant came on board to get employment, he said he was a good cook and steward; that he made good pies, &c.; that fault was found with him the first day; the victuals were not half cooked; the utensils were very dirty; that he was often spoken to, but did not amend; nothing was done better. This witness testified to the good accommodations of the galley, and the sufficiency of cooking utensils. He says that breakfast, which ought to have been ready at eight o'clock, was sometimes as late as ten o'clock. That the captain spoke to him in a mild manner, but the libellant would not give a direct answer, nor any cause for his conduct. He saw the captain scrape dirt out of one of the pans. He described the rope used by the captain as much smaller than was said by the libellant's witnesses; that the captain gave him four blows when

he called out to the crew to assist him, upon which account the captain gave him four or five blows more, after which the libellant went immediately to his duty. Both the witness and the captain had to cook for the cabin and the people. The galley was kept filthy and dirty. John Clifford, the second mate, gave substantially the same testimony with Elihu Arnold. Two respectable masters of vessels testified that they had examined the galley and cooking utensils of the Suffolk; that they were as good, and, in some respects better, than is usual for vessels of her size.

To apply the general principles I have stated to this case:

1. The chastisement inflicted on the libellant was, certainly, not without fault and provocation on his part. He had undertaken duties, important to the health and comfort of all the persons on board of the ship, and he either could not or would not perform them. His cooking was so bad as not only to call for repeated remonstrances from the cabin, but to cause a formal complaint, to the captain from the crew, who, we may presume, were not very dainty in their diet. The provisions were good and wholesome, but spoiled by the great want of skill or the carelessness in preparing them for the table. No one will say that it was not a more than ordinary provocation to be obliged to eat such meals for weeks together; nor that some efforts might not reasonably have been made to correct the evil. The cause of complaint was greatly aggravated by the libellant's habitual dirtiness, which he might have corrected by care and labor.

2. As to the instruments used in correcting him. The beatings were inflicted with a rope, the usual and proper instrument. There is a difference in the testimony about the size of the rope; but a rope was used. No blow was struck with a knife; if his lip was cut, it was but slightly, and was done by drawing the knife across his face, or mouth, to wipe the dirt from it which had been scraped from the pan.

3. There was no extraordinary severity in the chastisements inflicted upon him. There was no tying up, or stripping, nor anything to show a deliberate design to punish the libellant painfully or severely. The blows were given on the instant of the provocation; they were not numerous or heavily laid on, as the libellant's witnesses testify. He was never disabled, but went immediately to his work.

I cannot say that this is a case for damages. The libellant stands with the fault upon him, the origin and cause of all his maltreatment, of having hired himself for services he could not perform, and thereby imposed himself upon the captain and crew, who were daily suffering the penalty of his deception. It is worse for him if he was able to do the duties of his station, and, from carelessness, laziness, or obstinacy, would not. I should not omit to mention, that it was discovered, after they got to sea, that the cook was blind of one eye, and saw imperfectly with the other. These defects, certainly, in a measure disqualified him for the performance of his duties in a proper manner, at least so far as to require from him an increased attention and labor, which he would not bestow. When he was told of these defects, and his concealment of them,—for they did not appear on a cursory inspection,—he replied that his blindness was a misfortune, not a fault; he was answered, that is certainly so, but it was a fault to pass yourself upon us, as an able and competent cook, if, from any cause, you were unable to do the duties of one. He replied, that he must get a living somehow. He said he had come out of the hospital a short time before he came on board.

Upon this part of the case, if there were no other cause of action in the libel, it would be my duty simply to dismiss it, with or without costs, as I might think the circumstances required. The libel, however, claims a balance of wages due to the libellant, and wages are due to him, but at a rate not quite half of that he claims in his libel. In support of his demand at the rate of five pounds a month, he refers to the shipping articles, and prays that they may be produced. They have been produced, and it there appears, under his own signature, well and distinctly made, that his contract was for two pounds a month, which is but little below the wages of the rest of the crew. No attempt has been made to prove that any fraud or imposition was practiced upon him, or that he did not fully understand the contract he had made.

The account will stand thus:

| Wages, from 6th August to 22d September | £3 | 0 | 0 |
| Less amount received | 2 | 0 | 0 |
| Balance due | £1 | 0 | 0 |

It is ordered, adjudged and decreed, that as to those counts or articles in the libel which charge the respondent with sundry trespasses, and assaults and batteries, upon the person of the libellant, judgment be entered for the respondent; and that, as to the counts or articles which claim and demand wages to be due to the libellant, judgment be entered for him for the sum of $4.84, with costs of suit. But no costs or charges are allowed for the attendance of the witnesses of the libellant, as their evidence related entirely to the counts or articles for the assaults and batteries, upon which the decree is in favor of the respondent.